IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRELL MOLINARI,

      Plaintiff,                                   12cv1085
                                                               **ELECTRONICALLY FILED**

      v.

CONSOL ENERGY INC, ET AL.,

      Defendants.

## **MEMORANDUM OPINION RE: DEFENDANTS' MOTIONS TO DISMISS**
(DOC. NOS. 18, 21, 23, 26)

**I. Introduction**

On July 31, 2012, Plaintiff Darrell Molinari ("Plaintiff") filed suit in this Court based upon anti-trust laws and this Court's supplemental jurisdiction. Doc. No. 1.

Presently before the Court are the separate Motions to Dismiss filed by Defendants Consol Energy, Inc. ("Consol"), GMS Mine Repair & Maintenance, Inc. ("GMS"), Select Medical Corporation ("Select Medical"), and Gunther Nash, Inc. ("Gunther Nash").[1] Doc. Nos. 18, 21, 23, 26. After careful consideration of Plaintiff's Complaint (Doc. No. 1), Defendants' Motions to Dismiss and Briefs in support thereof (Doc. Nos. 18, 19, 21, 22, 23, 24, 26, 27), Plaintiff's Responses thereto (Doc. Nos. 35-40), Defendant GMS' Reply brief (Doc. Nos. 43-1 and 47), Defendant Gunther Nash's Reply Brief (Doc. No. 50), Plaintiff's Sur-Reply (Doc. No.

---

[1] In its brief in support of its Motion to Dismiss, Defendant Select Medical moved this Court to dismiss Counts I and IV of Plaintiff's Complaint. Doc. No. 24. On October 8, 2012, Defendant Select Medical filed a Motion to Join Defendant Consol's Motion to Dismiss in regards to Counts II and III of the Complaint. Doc. No. 30. Defendant Select Medical's Motion for Joinder was granted on October 9, 2012. Doc. No. 31.

54) and Defendant Select Medical's Reply Brief (Doc. No. 53) the Court will grant Defendants' Motions to Dismiss.[2]

## II. Factual Background

When reviewing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in Plaintiff's favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Taking Plaintiff's factual allegation as true solely for the purposes of this Memorandum Opinion, the facts of this case are as follows:

Plaintiff was employed by Select Medical from 1999 through 2002. Doc. No. 1, ¶ 10. He returned to employment with Select Medical in 2003. Id. at ¶ 11. Plaintiff resigned from his position at Select Medical in the fall of 2011. Id. at ¶ 13. Plaintiff did not execute a non-compete agreement, non-solicitation agreement, or any other agreement with a restrictive employment covenant. Id. at ¶¶ 10-11.

When Plaintiff resigned from Select Medical, he took a position with Gunther Nash, obtained through a third party administrator, CLP Resources, Inc. ("CLP Resources"). Id. at ¶ 13. Plaintiff's former employer, Select Medical, is a direct competitor of Gunther Nash. Id. at ¶ 20. Select Medical had an agreement with Consol that stated, in pertinent part:

> During the initial term and any renewal terms of this contract, and for a period of eighteen (18) months after the expiration or earlier termination of this contract, [Consol] covenants and agrees that it will not, directly or indirectly, without the express written consent of [Select Medical] (which consent may be withheld in

---

[2] Defendant GMS filed a Motion for Leave to File Reply Brief on October 11, 2012. Doc. No. 43. The Court granted Defendant's Motion on October 12, 2012. Doc. No. 46. Defendant Gunther Nash filed a Motion for Leave to File Reply Brief, which was granted on October 15, 2012. Doc. Nos. 48 and 49. That same day, Motions for Leave to File a Sur-Reply and Reply Brief were granted as to Plaintiff and Defendant Select Medical, respectively. 10/15/2012 Text Order.

> [Select Medical's] discretion for any reason), solicit, contract, engage, hire or employ any person who is, or at any time was, an employee of Select Medical.

Id. at ¶ 12 ("the Agreement").

Just prior to Plaintiff beginning employment with Gunther Nash, "Consol and/or Select Medical informed Gunther Nash of the Agreement, in an attempt to persuade Gunther Nash that it could not hire Plaintiff for the purpose of using him in any contract that provided services to Consol." Id. at ¶ 14. Gunther Nash was not persuaded that any Agreement applied to it and sent Plaintiff to act as the Safety Coordinator for Consol's Enlow Fork Mine, which was contracted between Gunther Nash and Consol. Id. at ¶¶ 15-17. Plaintiff held the position from September 26, 2011, until April 2012. Id. at ¶ 18.

In late March or early April 2012, Consol and Select Medical worked to have Gunther Nash terminate Plaintiff's services at the Enlow Contract. Id. at ¶ 20. This was done under the pretense of the Agreement and with Gunther Nash's complicity. Id. Specifically, Select Medical urged Consol to contact Gunther Nash and inform Gunther Nash of the Agreement and, as a result, Plaintiff was terminated. Id. at ¶ 21.

Consol and Select Medical also prevented Plaintiff from obtaining work at another company as a result of the Agreement. In March 2011, Plaintiff applied for a position with GMS as a safety coordinator at the Consol Bailey Mine. Id. at ¶ 23. Dennis Ewedosh, an employee of Consol, and Sean Miller, an employee of Select Medical, met with Jeff Giacobi, a GMS employee and persuaded GMS not to hire Plaintiff. Id. at ¶ 24. Select Medical and GMS are direct competitors. Id. at ¶ 25.

### III. Standard of Review

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and

3

plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and

4

where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

IV. **Discussion**

Plaintiff's Complaint contains five counts. Doc. No. 1. Namely: (1) Count I-Sherman Act violations against all Defendants; (2) Count II-Intentional Interference with Contractual Relations (with Gunther Nash) against Defendants Consol and Select Medical; (3) Count III-Intentional Interference with Prospective Contractual Relations (with Gunther Nash) against Defendants Consol and Select Medical; (4) Count IV-Intentional Interference with Prospective Contractual Relations (with GMS) against Defendants Consol and Select Medical; and (5) Count V-Wrongful Discharge against Defendant Gunther Nash.[3] This Memorandum Opinion will address each count separately.

A. *Count I-Sherman Act violations against all Defendants*

Count I of Plaintiff's Complaint alleges that Defendants used an agreement precluding current and former Select Medical employees from employment with any rival company who would provide services to Consol, which effectively suppressed competition in the labor market. Doc. No. 1, 4-8. Plaintiff contends that such action violates, 15 U.S.C. § 1 *et. seq.* ("the Sherman Anti-Trust Act" or "The Sherman Act").[4] Id.

---

[3] See Plaintiff's Complaint and Stipulations clarifying which Defendants are named at each count. Doc. Nos. 1, 16 and 17.

[4] In his Response to Defendants' Motions to Dismiss, Plaintiff attempts to clarify that he "does not allege that the no-hire clause in the . . . [Agreement] . . . is the agreement that violates the Sherman Act. To the contrary, the Plaintiff's Complaint is clear: the written no-hire clause was used as a pretense for a different illegal agreement that is sufficiently pled." Doc. No. 40, ¶ A.

The pertinent section of the Sherman Act provides that, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

To plead a Section 1 anti-trust claim, a Plaintiff must establish: "(1) that the defendant was a party to a contract, combination . . . or conspiracy and (2) that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (*quoting In Re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010) (internal quotations omitted)).

Plaintiff alleges that the agreement was an unreasonable restraint on trade because it: (1) "results in the elimination of competition or the reduction in the number of participants in the labor market"; (2) deprived Plaintiff of the benefits of free and fair competition in the market; (3) suppressed competition among rivals of Defendants; and (4) caused Plaintiff to lose his job. Doc. No. 1, ¶¶ 53, 56-58. To determine whether a defendant's conduct unreasonably restrains trade, Federal Courts apply the *per se* analysis, or if that test does not apply, the rule of reason analysis. *Rossi v. Standard Roofing*, 156 F.3d 452, 461 (3d Cir. 1998).

In this case, Plaintiff specifies that such actions are *per se* violations of Section 1 of the Sherman Act. Doc. No. 1, ¶ 60 and Doc. No. 40, ¶ C. *Per se* agreements are those "whose nature and necessary effects are so plainly anti-competitive that no elaborate study of the industry is needed to establish their illegality." *Eichorn v. AT&T Corp.*, 248 F.3d 131, 138 (3d

---

The Court notes that Plaintiff changes his position on the Agreement depending on which Count he is addressing. Plaintiff argues that the Agreement is void against public policy when discussing Count V. Doc. No. 42, 11-12. Inconsistently, Plaintiff argues that the written Agreement is valid (even if the interpretation of the written agreement is not valid) when discussing Counts I-IV. See n.6, *supra*. Regardless of the Agreement's validity or invalidity, the Court finds that Plaintiff's Complaint must be dismissed. As discussed in this Opinion, whether the Agreement was valid or void, the Court finds that the factual averments in Plaintiff's Complaint are not sufficient to state claims for relief.

Cir. 2001), *cert. denied*, 534 U.S. 1014 (2001). The Court finds that the alleged agreement between Select Medical and Consol is analogous to the "Post-Closing Net" in *Eichorn*, in which Lucent and Texas Pacific Group agreed that Lucent "would not seek to hire, solicit, or rehire any . . ." former employees. *Id.* at 137. As in *Eichorn*, Plaintiff contends that the Agreement was a group boycott and a horizontal price fixing conspiracy. *Id.* at 142 and Doc. No. 1, ¶¶ 36, 52. There is a judicial hesitance to extend the *per se* rule to new categories of anti-trust claims, and like the United States Court of Appeal for the Third Circuit in *Eichorn*, the Court does not find that this case is a *per se* violations of the Sherman Act and declines to find that non-compete agreements of this type are *per se* violation of the Sherman Act. Therefore, because Plaintiff only alleges a *per se* violation of Section 1 of the Sherman Act, which the Court finds is not appropriate, Count 1 of Plaintiff's Complaint will be dismissed as to all Defendants.[5] *See Ins. Brokerage*, 618 F.3d at 317 (*citing e.g., Texaco Inc. v. Dagher*, 547 U.S. 1, 7 n.2 (2006)) ("If the court determines that the restraint at issue is sufficiently different from the *per se* archetypes to require application of the rule of reason, the plaintiff's claims will be dismissed.").

> **B. Count II-Intentional Interference with Contractual Relations (with Gunther Nash) against Defendants Consol and Select Medical**
> **Counts III and IV-Intentional Interference with Prospective Contractual Relations (with Gunther Nash and GMS respectively) against Defendants Consol and Select Medical**

In Counts II, III and IV, Plaintiff contends that Defendants Consol and Select Medical intentionally interfered with his existing contractual relationship with Gunther Nash and prospective contractual relationships with Defendants Gunther Nash and GMS. Specifically,

---

[5] The Court also finds that there are no factual averments in Plaintiff's Complaint against Defendant GMS which would reasonably make a claim for a violation of the Sherman Act. At most, Plaintiff's Complaint alleges that Defendant GMS was induced not to hire Plaintiff by Defendants Consol and Select Medical, who were acting in concert. Doc. No. 1. Although Plaintiff alleges "an illegal agreement exists" because Defendant GMS was not party to the Agreement, there is not sufficient allegations to state a claim for violation of the Sherman Act against Defendant GMS.

7

Plaintiff claims that Defendants Consol and Select Medical knew of Plaintiff's employment relationship with Defendant Gunther Nash and "purposefully and intentionally harmed the employment relationship by intervening and forcing Gunther Nash to terminate the employment relationship and/or to prohibit Plaintiff from working for Gunther Nash at any Consol facility or location." Doc. No. 1, ¶ 54.

Pennsylvania Courts apply the Restatement (Second) of Torts in such cases. Under Pennsylvania law, the elements of intentional interference with an existing or prospective contractual relation are: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) occasioning of actual legal damage as a result of the defendant's conduct. *Crivelli v. GMC*, 215 F.3d 386 (3d Cir. 2000) *citing Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. 1997). The Court finds that Plaintiff has failed to establish element (3), the absence of privilege or justification on the part of Defendant. Id.

Section 773 of the Restatement (Second) of Torts provides that:

One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

The Court finds instructive the Superior Court of Pennsylvania's analysis of an allegedly unenforceable restrictive covenant in *Gresh v. Potter McCune Co.*, 344 A.2d 540 (Pa. Super. 1975). The Court found that Plaintiff's claim for torturous interference against his former employer was not proper because the Company "had a contractual interest which it sought to

protect . . . . " Id. at 543. Here, Plaintiff alleges a contractual agreement between Defendants Consol and Select Medical which Defendant Consol sought to enforce against Plaintiff's new employer, Defendant Gunther Nash. Doc. No. 1, ¶¶ 12, 14. Under Section 773 of the Restatement (Second) of Torts, Defendants Consol and Select Medical asserting their contractual relationship to Plaintiff's new employer, or potential new employer, would not be improper interference. ("One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract . . . does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.").[6] Therefore, the Court finds that Counts II, III, and IV of Plaintiff's Complaint must be dismissed.

### C. Count V-Wrongful Discharge against Defendant Gunther Nash

At Count V, Plaintiff alleges that Defendant Gunther Nash discharged him because of Defendants Consol and Select Medical's "contract in restraint on trade which was made independently of the sale of a business or contract of employment" which was void because it was against public policy in Pennsylvania. Doc. No. 1, ¶¶ 83-84. Plaintiff contends that his discharge "was wrongful as being against the public policy of Pennsylvania." Id. at ¶ 85.

Defendant Gunther Nash hired Plaintiff after being informed of Defendants Consol and Select Medical's Agreement. Id. at ¶¶ 13-14. Therefore, Plaintiff's wrongful discharge claim

---

[6] Plaintiff alleges that Section 773 does not apply because comment a. provides that "the actor's claim may be either against the person induced or against the one harmed . . . ." and in this case, Defendant Consol does not make a claim "against the person induced, [Defendant] Gunther Nash, or against the one harmed, the Plaintiff." Doc. No. 40, 9. The Court's reading of the Complaint is that Defendants Consol and Select Medical made a claim to enforce their valid written Agreement against Defendants Gunther Nash and GMS (i.e., those induced to terminate or not hire Plaintiff). See Doc. Nos. 1 at ¶¶ 36, 49 and 40 at ¶ A.

must be founded in his termination after Defendant Consol prohibited him from working at the Enlow Form Mine. Id. at ¶¶ 21-23. Although Plaintiff styles his termination as one "against public policy in Pennsylvania," the Court does not find that Defendant Gunther Nash's termination of Plaintiff, an at-will employee, is one of the public policy exceptions to the general provision that in Pennsylvania, an employee at-will, without an employment agreement, may be terminated at any time, with or without cause. *Weaver v. Harpster*, 975 A.2d 555, 557, n. 3 (2009).

The Court declines to find a public policy exception that would permit Plaintiff to pursue a common law cause of action for wrongful termination. The Pennsylvania Judiciary has chosen to find such exceptions only in the narrowest of cases. *Weaver*, 975 A.2d at 563-64. There is no reason to believe that the Pennsylvania Supreme Court would find that the instant case is one of those rare exceptions where there is a common law cause of action for wrongful termination. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938).

Therefore, Count V of Plaintiff's Complaint against Defendant Gunther Nash will be dismissed.

### V. Conclusion

Plaintiff's Complaint must be dismissed as to all Defendants for the reasons stated above. At this time, the Court does not find that amendment of the Complaint would invariably be futile. Therefore, Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.

An appropriate Order follows.

                 s/ Arthur J. Schwab
                 Arthur J. Schwab
                 United States District Judge

cc:  All Registered ECF Counsel and Parties