IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRELL MOLINARI,

    Plaintiff,                     12cv1085
                                       **ELECTRONICALLY FILED**

    v.

CONSOL ENERGY INC, ET AL.,

    Defendants.

**MEMORANDUM OPINION RE: DEFENDANTS' RENEWED MOTIONS
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (DOC. NOS. 58, 61)**

**I. Introduction**

On July 31, 2012, Plaintiff Darrell Molinari ("Plaintiff") filed suit, in this Court, pursuant to 28 U.S.C. §§ 1331, 1337, and 2201 against Defendants Consol Energy, Inc. ("Consol"), GMS Mine Repair & Maintenance, Inc. ("GMS"), Select Medical Corporation ("Select Medical"), and Gunther Nash, Inc. ("Gunther Nash") . Doc. No. 1.[1] Following Defendants' Motions to Dismiss, the Court dismissed Plaintiff's Complaint in its entirety without prejudice to file an Amended Complaint. Doc. Nos. 55 and 56.[2]

---

[1] Plaintiff's Original Complaint contained five counts. Doc. No. 1. Namely: (1) Count I-Sherman Act violations against all Defendants; (2) Count II-Intentional Interference with Contractual Relations (with Gunther Nash) against Defendants Consol and Select Medical; (3) Count III-Intentional Interference with Prospective Contractual Relations (with Gunther Nash) against Defendants Consol and Select Medical; (4) Count IV-Intentional Interference with Prospective Contractual Relations (with GMS) against Defendants Consol and Select Medical; and (5) Count V-Wrongful Discharge against Defendant Gunther Nash.

[2] The Prior Opinion of this Court is reported at *Molinari v. Consol Energy Inc.*, 2012 WL 4928489 (W.D. Pa. Oct. 16, 2012) (Schwab, J.). In that Opinion, the Court rejected Plaintiff's contention that the Agreement is illegal *per se*.

On November 2, 2012, Plaintiff filed an Amended Complaint alleging a violation of the Sherman Act against Defendants Consol and Select Medical (Count I); and seeking declaratory judgment against those same Defendants (Count II). Doc. No. 57. On November 9, 2012, Defendants Consol and Select Medical moved this Court, in separate renewed Motions to Dismiss, to dismiss Plaintiff's Amended Complaint in its entirety. Doc. Nos. 58 and 61.

After careful consideration of Plaintiff's Amended Complaint (Doc. No. 57), Defendant Consol's Renewed Motion to Dismiss and Brief in support thereof (Doc. Nos. 58, 59), Defendant Select Medical's Renewed Motion to Dismiss and Brief in support thereof (Doc. Nos. 61, 63), and Plaintiff's Response in Opposition and Brief in support thereof (Doc. Nos. 64, 65), the Court will GRANT Consol and Select Medical's Motions to Dismiss (Doc. Nos. 58 and 61) and will DISMISS the Amended Complaint.

**II. Factual Background**

When reviewing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts all factual allegations in the Amended Complaint as true and draws all reasonable inferences in Plaintiff's favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Accepting Plaintiff's factual allegation as true solely for the purposes of this Memorandum Opinion, the facts of this case are as follows:

Plaintiff was employed by Select Medical from 1999-2002 and then returned to their employ in 2003. Doc. No. 57, ¶ 9. Plaintiff did not execute a non-compete agreement, non-solicitation agreement, or any other agreement with a restrictive employment covenant with any entity. Id. at ¶ 13.

Select Physical Therapy Network Services ("Select Physical Therapy"), which is part of Select Medical's Outpatient Division, has an agreement with Consol that states, in pertinent part:

2

> During the initial term and any renewal terms of this contract, and for a period of eighteen (18) months after the expiration or earlier termination of this contract, [Consol] covenants and agrees that it will not, directly or indirectly, without the express written consent of [Select Physical Therapy] (which consent may be withheld in [Select Physical Therapy]'s sole discretion for any reason), solicit, contract, engage, hire or employ any person who is, or at any time was, an employee of [Select Physical Therapy].

Id. at ¶¶ 10-11 ("the Agreement").

In or around March 2011, Plaintiff applied for a position with GMS as safety coordinator at Consol's Bailey Mine. Id. at ¶ 14. After Plaintiff applied, Dennis Ewedosh, an employee of Consol, and Sean Miller, an employee of Select Medical, met with Jeff Giacobi, an employee of GMS, and persuaded the company not to hire Plaintiff because of the Agreement. Id. at ¶ 15. Select Medical and GMS are competitors for Consol's business and in the global labor market. Id. at ¶ 16.

In fall 2011, Plaintiff resigned from Select Medical to take a position with Gunther Nash, through a third party administrator, CLP Resources, Inc. Id. at ¶ 17. Prior to Plaintiff commencing his employment at Gunther Nash, Consol and/or Select Medical informed Gunther Nash of the Agreement in an attempt to prevent the company from hiring Plaintiff. Id. at ¶ 19. Gunther Nash was not persuaded that the Agreement applied to it and sent Plaintiff to act as the Safety Coordinator for Consol's Enlow Fork Mine, which was contracted to Gunther Nash by Consol. Id. at ¶¶ 20-22. Consol and Select Medical contend that Consol "indirectly" contracted with, engaged, or hired Plaintiff when Gunther Nash assigned Plaintiff to the Enlow Fork Mine. Id. at ¶ 24.

In late March or early April 2012, Consol contacted Gunther Nash to inform it that it was "required by Consol to let [Plaintiff] go" because of the Agreement. Id. at ¶ 25. Consol threatened to terminate the Enlow Contract if Gunther Nash did not comply with Consol's

3

request. Id. Nonetheless, Plaintiff was employed as the Safety Coordinator with Gunther Nash from September 26, 2011, until April 2012, at which time Gunther Nash terminated him because of the Agreement. Id. at ¶ 23.

Other employees have been denied employment because of the Agreement. Specifically, GMS withdrew an oral offer of employment due to the Agreement and GMS terminated a former Select Medical employee because of the Agreement. Id. at ¶¶ 26-31.

**III. Standard of Review**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed.R.Civ.P. 8(a)(2) requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

4

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**IV. Discussion**

Plaintiff's Amended Complaint contains one cause of action against both Defendants for alleged violation of the Sherman Act. Doc. No. 57. Plaintiff's second count seeks a declaration that the Agreement is unenforceable as a matter of law, an award of damages as a result of its enforcement, and a permanent injunction prohibiting Defendants from enforcing the Agreement. Id. at ¶¶ 74-87.

*A. Count I-Sherman Act violation against Defendants*

As in his Original Complaint, Plaintiff alleges in Count I of the Amended Complaint that Defendants used the Agreement to preclude current and former Select Medical employees from employment with any "rival" company who would provide services to Consol, which effectively suppressed competition in the relevant product and geographic market. Doc. No. 57, ¶¶ 48-50. Plaintiff contends that such action violates 15 U.S.C. § 1 *et. seq.* ("the Sherman Antitrust Act" or "The Sherman Act"). Id. at ¶¶ 71-72.

The pertinent section of the Sherman Act provides that, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

To plead a Section 1 antitrust claim, a Plaintiff must establish: "(1) that the defendant was a party to a contract, combination . . . or conspiracy and (2) that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010) (internal quotations omitted)).

Plaintiff contends that the Agreement is an illegal, unreasonable restraint of trade because: (1) it is not sufficiently limited in time, geography, or job function; (2) it is not ancillary to the sale of a business; (3) it is not in an employment agreement with the employee; (3) it is not narrowly limited to serve a legitimate business purpose; (4) it does not protect trade secrets; and (5) it is overly broad because it applies to any employer who provides, or may provide, any services to Consol. Id. at ¶¶ 51-55. To determine whether a Defendant's conduct unreasonably restrains trade, Federal Courts apply the *per se* analysis, or if that test does not apply, the rule of reason analysis. *Rossi v. Standard Roofing*, 156 F.3d 452, 461 (3d Cir. 1998).

6

In his Amended Complaint, Plaintiff contends that the Agreement is an unreasonable restraint of trade and violates the Sherman Act under the "rule of reason" analysis.[3] Doc. No. 57. Plaintiff bears the initial burden, under the rule of reason standard, to establish:

(1) The defendants contracted, combined or conspired under each other;

(2) The combination or conspiracy produced adverse anticompetitive effects within the relevant product and geographic markets;

(3) The objects of and the conduct pursuant to that contract or conspiracy were illegal; and

(4) The plaintiff[ was] injured as a result of that conspiracy.

*Rossi*, 156 F.3d at 461 (citing *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 763 F.2d 1482, 1489 (3d Cir. 1985)), *vacated on other grounds by* 475 U.S. 1105 (1986).

Defendant Select Medical contends that Plaintiff has failed to establish elements (2), (3), and (4) of the rule of reason standard. Doc. No. 63. Defendant Consol argues that Count One must be dismissed with prejudice because Plaintiff has not established element (2) of the rule of reason standard. Doc. No. 59.

As to element (2), Plaintiff has the burden to demonstrate that the Agreement produced adverse anticompetitive effects within the relevant product and geographic markets. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (citing *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994)). "[I]n most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers." *Id.* (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992)). However, the United States Court of Appeals for the Third Circuit held that:

---

[3] Courts that have considered similar agreements have applied a rule of reason analysis. *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) (citing cases).

> Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

*Id.* (citing *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992)).

The United States Court of Appeals for the Second Circuit has summarized this "rule" in the context of a Motion to Dismiss as follows: "[t]o survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes-analysis of the interchangeability of use or the cross-elasticity of demand . . . and it must be reasonable." *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (internal quotation marks and citations omitted).

In this case, Plaintiff defines the product market as "labor and services for sale to any employer who provides, or who may provide, services to Consol, directly or indirectly." Doc. No. 57, ¶ 47. Plaintiff does not attempt to narrow the market to include only safety coordinators. Instead, he argues that the relevant product market includes landscapers, janitors, safety coordinators, and the like. Doc. No. 65, 2.

This market definition alleges an agreement by the purchasers of a product, typically referred to as buyer-side collusion. Although this does not affect the legality of the alleged agreement, *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 235 (1948), it does impact how the market is defined. As the United States Court of Appeals for the Tenth Circuit explained:

> [T]he market is not the market of competing sellers [the employees selling their services] but of competing buyers [the companies buying these services]. This

> market is comprised of buyers who are seen by sellers as being reasonably good substitutes. A greater availability of substitute buyers indicates a smaller quantum of market power on the part of the buyers in question.
>
> [T]he proper focus is . . . the commonality and interchangeability of the buyers, not the commonality or interchangeability of the sellers. The question is not the interchangeability of, for example, lawyers with engineers. At issue is the interchangeability, from the perspective of a [managerial, professional, or technical] employee, of a job opportunity in the oil industry with, for example, one in the pharmaceutical industry.

*Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1135 (10th Cir. 2002) (quoting *Todd*, 275 F.3d at 202) (fourth alteration added); *see also Brown v. Pro Football, Inc.*, 50 F.3d 1041, 1061 (D.C. Cir. 1995) (Wald, J., dissenting).

Using Plaintiff's definition in the case at bar, "the question is not the interchangeability of [employees providing services for Consol]" but "[a]t issue is the interchangeability, from the perspective of a[n employee providing services to Consol] of a job opportunity [providing services for a different company]." *Telcor*, 305 F.3d at 1135 (quoting *Todd*, 275 F.3d at 202).

"Cases in which dismissal on the pleadings is appropriate frequently involve either (1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way." *Todd*, 275 F.3d at 200.

As recognized in *Todd*, Courts have frequently granted Motions to Dismiss in which the relevant market has been limited to a single entity. *E.g. Queen City*, 124 F.3d at 438 (rejecting a market that only included Domino's); *Smugglers Notch Homeowners' Ass'n, Inc. v. Smugglers' Notch Mgmt. Co., Ltd.*, 414 F. App'x 372, 376 (2d Cir. 2011) (rejecting a market only including vacation homes in one village); *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063-64 (9th Cir. 2001) (rejecting a market only including UCLA's women's soccer program); *Hack v. President*

*and Fellows of Yale College*, 237 F.3d 81, 86-87 (2d Cir. 2000) *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (rejecting a market for education which only included Yale); *Apple, Inc. v. Psystar Corp.*, 586 F.Supp.2d 1190, 1199 (N.D. Cal. 2008) (rejecting a market that only included Mac OS); *Subsolutions, Inc. v. Doctor's Assocs.*, 62 F.Supp.2d 616, 625 (D. Conn. 1999) (rejecting a market which only included Subway); *B.V. Optische Industrie de Oude Delft v. Holgic, Inc.*, 909 F.Supp. 162, 171 (S.D.N.Y. 1995) (rejecting a market only containing chest equalization radiography).

Plaintiff's Amended Complaint is void of any factual allegation that Consol is so unique as an employer, either direct or indirect, as to constitute its own market. There is no averment by Plaintiff that working as a safety coordinator in a separate industry would not be equivalent to working as a safety coordinator for Consol.[4] There are likewise no averments in Plaintiff's Amended Complaint that working as a landscaper, or in any other position utilized by Consol, for a company in a different industry would result in economic harm to the employees. Thus, "[P]laintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand." *Queen City*, 124 F.3d at 436.

Even if the allegations in Plaintiff's Amended Complaint regarding Consol's business activities (Doc. No. 57, ¶¶ 36-42) is an argument that Consol's size make it the only participant in the relevant market, the Court rejects that argument. There are no factual averments in the Amended Complaint that Consol is able to impact salaries paid by other coal companies located around the world, which Plaintiff avers is the relevant geographic market. Thus "[P]laintiff fails

---

[4] Paragraphs 48 and 49 of Plaintiff's Amended Complaint are conclusory allegations that merely recite the necessary elements for a Section 1 claim without any factual averments. Doc. No. 57, ¶¶ 48-49.

to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand." *Queen City*, 134 F.3d at 436.

Furthermore, there are no averments by Plaintiff that he, or any other former Select Medical employee, gained such unique skills while working for Consol that he could not obtain similar employment with similar renumeration with another company in the same line of business as Consol. It is not self-evident that a safety coordinator with Consol would be unable to perform the same duties for another company. Thus, the Court rejects any argument that the market is properly defined because of unique skills in either the industry or with Consol in particular. No discovery is necessary because "[Plaintiff] alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in [P]laintiff's favor." *Queen City*, 124 F.3d at 436.

The Court recognizes that such a narrow market definition may be appropriate in some circumstances; however, this case is not such an instance. The Court joins over one dozen Federal Courts that have rejected market definitions including only one product at the Motion to Dismiss stage. *E.g., American Sales Co., Inc. v. AstraZeneca AB*, 2011 WL 1465786, *3-4 (S.D.N.Y. Apr. 14, 2011) (rejecting a market that only included Prilosec OTC); *In re ATM Fee Antitrust Litig.*, 2010 WL 2557519, *6-8 (N.D. Cal. June 21, 2010) (rejecting a market that only included one brand of ATMs); *Bayer Schera Pharma AG v. Sandoz, Inc.*, 2010 WL 1222012, *6 (S.D.N.Y. Mar. 29, 2010) (rejecting a market comprised of a single oral contraceptive as "implausible and irrational"). Accordingly, Count I of Plaintiff's Amended Complaint will be dismissed with prejudice. As the Court has found that the Plaintiff's product market has failed to demonstrate element (2) of the rule of reason standard, the Court declines to address the remaining arguments for dismissal raised by Defendants.

### B. Count II-Declaratory Judgment against Defendants

Count II of Plaintiff's Amended Complaint seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 *et seq.*, that "the Agreement is unenforceable under Pennsylvania law, an award of damages resulting from the enforcement of the Agreement against the Plaintiff, and a permanent injunction prohibiting Defendants from continued enforcement of the Agreement." Doc. No. 57, ¶ 87. Defendants both argue that: (1) Plaintiff cannot receive declaratory judgment relief for acts that occurred in the past;[5] (2) Plaintiff has no rights under Pennsylvania law; and (3) damages are not available with a declaratory judgment. Doc. No. 59, 9-11; Doc. No. 63, 12. Defendant Select Medical also argues that the Court is not required to exercise supplemental jurisdiction over Count II and the Agreement is valid. Doc. No. 63, 12-15.

"Article III standing is required to establish a justiciable case or controversy within the jurisdiction of the federal courts . . ." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 307 (3d Cir. 2011) (quoting *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008)).

"The Declaratory Judgment Act creates a remedy by which federal courts 'may declare the rights and other legal relations of any interested party seeking such declaration' when there is a 'case of actual controversy.'" *Wyatt v. Virgin Islands, Inc.*, 385 F.3d 801, 805 (3d Cir. 2004) (quoting 28 U.S.C. § 2201(a)). A case or controversy is:

> one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a

---

[5] Although not styled as such in their Motions, Defendants' Briefs challenge this Court's jurisdiction to adjudicate the merits of Count II.

12

> decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

The United States Court of Appeals for the Third Circuit has held that "[t]o satisfy the standing and 'case or controversy' requirements of Article III, a party seeking a declaratory judgment 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). Furthermore, "even if defendants violated [Plaintiff's] rights in the past as he alleges, he is not entitled to a declaration to that effect." *Id.* (citing *Brown v. Fauver*, 819 F.2d 395, 399-400 (3d Cir. 1987)).

There is no case or controversy between Plaintiff and Defendants with respect to the Agreement under Pennsylvania law which is proper for declaratory judgment. Plaintiff admits in his Brief that "the [A]greement . . . create[s] . . . a controversy about the respective rights of many interested parties . . . ." Doc. No. 65, 13. Those other interested parties may properly bring a declaratory judgment action to resolve that controversy. Plaintiff may not seek just a declaration on their behalf.[6]

Plaintiff also argues that there is an active controversy between him and Defendants. This argument lacks merit. Plaintiff seeks damages for the actions that Defendants have taken in the past, which is not the purpose of declaratory judgment. If this Court were to enter a declaratory judgment that the Agreement is unenforceable, it would be an advisory opinion for other potential employees instead of ruling on a case or controversy.

---

[6] This is not a case where, because of time constraints, the controversy is "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973) (quoting *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)).

In *PHP Healtcare Corp v. EMSA L.P.*, the United States District Court for the Eastern District of Virginia held that a non-party to a restrictive covenant does not have standing to sue for a declaratory judgment that the restrictive covenant is unenforceable. *See PHP Healtcare Corp v. EMSA L.P.*, 14 F.3d 941, 943 (4th Cir. 1993). The District Court only ruled on the legality of the restrictive covenant when considering claims of tortious interference of contractual relations. *Id*. There is no difference in the standing between a non-party competitor suing to invalidate a covenant between an employer and employees, as in *PHP*, and a former employee suing to invalidate a covenant between two employers, as in the case at bar. Other District Courts not within this Circuit have likewise found that a non-party to a restrictive employment covenant does not have standing to bring a declaratory judgment action. *E.g., Sun Commodities, Inc. v. C.H. Robinson Worldwide, Inc.,* 2012 WL 602616, *2-3 (S.D. Fla. Feb. 23, 2012); *Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC,* 2006 WL 2331009, *6 (S.D.N.Y. Aug. 11, 2006); *Bowhead Info. Tech. Servs., LLC v. Catapult Tech. Ltd.,* 377 F.Supp.2d 166, 172-73 (D.D.C. 2005); *Previer Pyrotechnics, Inc. v. Zambelli Fireworks Mfg. Co.*, 2005 WL 1307682, *2 (W.D. Mo. May 31, 2005); *Defiance Hospital, Inc. v. Fauster-Cameron, Inc.*, 344 F.Supp.2d 1097, 1118 (N.D. Ohio 2004).

Plaintiff's reliance on *Bruhn v. STP Cortp.*, 312 F.Supp 903, 905-06 (D.Colo 1970), is misplaced. This controversy does not fit into the first category discussed because Plaintiff is not a party to the Agreement and therefore cannot breach the Agreement. *Bruhn* discusses the specific scenario of a company or individual who entered into a restrictive covenant seeking declaratory judgment before breaching that agreement. This controversy also does not fit into the second category because Plaintiff's termination already occurred. Thus, the proper course of action is not a declaratory judgment action, but instead a suit for tortious interfence with

14

contractual relations. *See PHP*, 14 F.3d at 943. The Court has considered Plaintiff's other arguments and finds them to be without merit. Accordingly, the Court finds that Plaintiff does not have standing to bring the declaratory judgment action in Count II of the Complaint.[7] Therefore, Count II of Plaintiff's Complaint will be dismissed with prejudice.

**V. Conclusion**

In sum, Plaintiff has defined a "legally insufficient" market in Count I of his Amended Complaint. *Queens City*, 124 F.3d at 436. The Court does not have subject matter jurisdiction for Count II of Plaintiff's Amended Complaint because it seeks declaratory judgment for past actions of Defendants. Accordingly, Defendants' Motions to Dismiss (Doc. Nos. 58 and 61) will be **GRANTED** and the Amended Complaint (Doc. No. 57) will be **DISMISSED with PREJUDICE.**

An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties

---

[7] Because the Court does not have subject matter jurisdiction with respect to Count II, the Court declines to address Defendants' other arguments for dismissal pursuant to Fed.R.Civ.P. 12(b)(6).